1

2

3

4

5

6        UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
7

8   DELORI SOUKUP,                           NO.  C16-1512-JPD

9                        Plaintiff,

10          v.                               ORDER

11  NANCY A. BERRYHILL, Acting
    Commissioner of Social Security,[1]
12
                         Defendant.
13

14          Plaintiff Delori Soukup appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") that denied her applications for Disability

16  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17  of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18  administrative law judge ("ALJ").  For the reasons set forth below, the Court AFFIRMS the

19  ALJ's decision.

20

21

22
    _____
23          [1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security
    Administration.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
24  substituted for Carolyn W. Colvin as defendant in this suit.  The Clerk is directed to update the
    docket, and all future filings by the parties should reflect this change.

    ORDER - 1

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff is a 53-year-old woman with a college degree.  Administrative Record ("AR") at 45, 47.  Her past work experience includes employment as a property and acquisition specialist.  AR at 47-49, 232.  At the time of the administrative hearing, Plaintiff was working as a substitute middle school teacher.  AR at 52-53.

On September 20, 2013, Plaintiff protectively filed a claim for DIB, alleging an onset date of June 30, 2011.  AR at 191-94.  She protectively applied for SSI in June 2014.  AR at 209-14.  Plaintiff asserts that she is disabled due to bipolar disorder, paranoia, anxiety, mood swings, and psychosis.  AR at 231.

The Commissioner denied Plaintiff's claims initially and on reconsideration.  AR at 116-22, 129-36.  Plaintiff requested a hearing, which took place on December 18, 2014.  AR at 39-87.  On March 29, 2015, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on her finding that Plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 23-33.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On September 27, 2016, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. EVALUATING DISABILITY

As the claimant, Ms. Soukup bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the

claimant is unable to perform other work, then the claimant is found disabled and benefits may

be awarded.

## V. DECISION BELOW

On March 20, 2015, the ALJ found:

1.      The claimant meets the insured status requirements of the Act through December 31, 2017.

2.      The claimant engaged in substantial gainful activity after the alleged onset date.

3.      The claimant's bipolar disorder with psychosis is a severe impairment.

4.      The claimant does not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.      The claimant has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, routine tasks. She should not work with the general public. She can have occasional, superficial contact with co-workers, but should work independently, not on tandem tasks. She is able to accept supervisory instructions. She needs a routine and predictable environment.

6.      The claimant is unable to perform any past relevant work.

7.      Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

8.      The claimant has not been under a disability, as defined in the Act, from June 30, 2011, through the date of the decision.

AR at 25-33.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1.      Whether the ALJ erred in assessing medical opinion evidence; and

1      2.      Whether the ALJ erred in discounting Plaintiff's subjective testimony.

2  Dkt. 11 at 1.[3]

3                          VII.    DISCUSSION

4  A.      The ALJ did not err in discounting Plaintiff's subjective testimony.

5          The ALJ discounted Plaintiff's subjective testimony for a number of reasons: (1) the

6  medical evidence was inconsistent with her allegations; (2) her activities were inconsistent

7  with her allegations; and (3) her lack of candor about her work activity at the hearing.  AR at

8  28-30.  Plaintiff argues that the ALJ's reasoning was not clear and convincing, as required in

9  the Ninth Circuit.

10         1.      *Legal standards*

11         As noted above, it is the province of the ALJ to determine what weight should be

12 afforded to a claimant's testimony, and this determination will not be disturbed unless it is not

13 supported by substantial evidence.  A determination of whether to accept a claimant's

14 subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929;

15 *Smolen*, 80 F.3d at 1281.  First, the ALJ must determine whether there is a medically

16 determinable impairment that reasonably could be expected to cause the claimant's symptoms.

17 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces

18 medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

19 testimony as to the severity of symptoms solely because they are unsupported by objective

20

21         [3] Although Plaintiff also challenges the ALJ's step-five findings, in doing so she
    reiterates arguments addressed elsewhere.  Dkt. 11 at 15.  Thus, this issue will not be addressed
22  separately.
         Plaintiff also challenges the ALJ's step three findings, arguing that if a challenged
23  medical opinion had been credited, it could have supported a finding that Plaintiff met Listing
    12.03.  Dkt. 11 at 1, 9-11.  Because this issue is enveloped within Plaintiff's challenges to the
24  ALJ's assessment of that medical opinion, this issue need not be addressed separately.

medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin* 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

2.    *Medical evidence*

Plaintiff contends that the ALJ did not specifically explain how the medical evidence contradicted her testimony, and that the ALJ's summary of the evidence fails to constitute a clear and convincing reason to discount her testimony. Dkt. 11 at 13.

The Court disagrees. The ALJ summarized the medical evidence in order to show that despite Plaintiff's conditions and occasional flares of symptoms, she nonetheless retained functionality. AR at 28, 30 ("While the treatment record shows that the claimant has paranoia and has experienced brief periods of intense symptomology, it also shows that she has maintained a robust regiment of daily activities including school and work."). The ALJ

pointed to evidence showing that medication and counseling resolved Plaintiff's symptoms. *Id.*

Plaintiff argues that her symptoms simply waxed and waned, and that the ALJ ignored that cycle when finding that her symptoms improved. Dkt. 15 at 6. But as the ALJ found, the medical evidence actually demonstrates that Plaintiff's symptoms flared during periods of 2011 and 2012, and then stabilized via medication and counseling since that time. *See* AR at 28, 30. Improvement with treatment is a clear and convincing reason to discount a claimant's subjective testimony. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (medications, treatments or other methods used to alleviate symptoms are "an important indicator of the intensity and persistence of your symptoms"); *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Plaintiff does not point to any evidence showing that her symptoms continued to flare during a time that she was compliant with her medication and counseling regimen, or explain how the ALJ's interpretation of the medical evidence was otherwise not based on substantial evidence or drawn from reasonable inferences. Accordingly, the court finds that this reason supports the ALJ's determination regarding Plaintiff's subjective testimony.

3.    *Activities*

The ALJ found that Plaintiff's activities were inconsistent with her allegations of disabling functional limitations. AR at 30. Although Plaintiff contends that the ALJ did not explain how her activities contradicting her testimony (Dkt. 11 at 13), the ALJ noted some specific inconsistencies. For example, the ALJ stated that Plaintiff reported at the hearing that she yells at others and experiences ongoing paranoia, but that the record showed that Plaintiff participated in many social activities throughout the adjudicated period, and that Plaintiff's

providers noted that despite her paranoia, she maintained a high level of functioning. AR at 29-30 (citing AR at 296). The ALJ also noted that Plaintiff was working at the time of the hearing, which contradicted her testimony that she was unable to interact with others. AR at 29.

Plaintiff argues that the ALJ's findings overlook the difficulties she experienced at school, which demonstrate that she did have social limitations. Dkt. 15 at 7 (citing AR at 51 (describing a complaint made against Plaintiff that led her to withdraw from school)). The increase in symptoms that led Plaintiff to withdraw from school apparently occurred during a time that she was not taking her medication. AR at 381. Plaintiff's increased symptoms while not taking medication does not undermine the ALJ's reasoning regarding her ability to participate in school activities.

Plaintiff also alleges that her school provided accommodations for her. Dkt. 11 at 13 (citing AR at 591 (a treatment note indicating that Plaintiff brought "paper to get special consideration at school")). Another provider's report mentions that Plaintiff was allowed extra time and privacy during tests. AR at 621. These accommodations are not relevant to the ALJ's reasoning regarding Plaintiff's school activities, which is that Plaintiff was able to interact with other people at school, despite allegations of an inability to interact. Furthermore, as noted by the Commissioner, the school accommodations are arguably consistent with the ALJ's RFC assessment, and thus do not show that the ALJ erred in evaluating Plaintiff's symptoms. *See* Dkt. 14 at 14.

4.  *Plaintiff's current work*

The ALJ found that Plaintiff's

current work history is inconsistent with her allegations. Not only is the work itself inconsistent, the claimant initially did not disclose her current work activity during the hearing. She only admitted to her current work after being

questioned several times and appeared to be attempting to hide this work activity.

AR at 29. Plaintiff's opening brief discusses prior work, which is not relevant to the ALJ's reasoning, which focuses only on her current work. Dkt. 11 at 14. Regarding her current work, Plaintiff argues that "the ALJ did not even find that this work rose to the level o[f] substantial gainful activity[,]" and thus was not a convincing basis to reject her reports. Dkt. 11 at 14-15.

Plaintiff misstates the ALJ's findings. The ALJ indeed found that Plaintiff's current work constituted substantial gainful activity, but nonetheless proceeded through the remainder of the five-step disability inquiry because the work was performed sporadically throughout the adjudicated period. *See* AR at 25. Furthermore, the ALJ's findings regarding Plaintiff's lack of candor is a clear and convincing reason to discount her subjective testimony. *See Lira v. Astrue*, 2010 WL 3789564, at *7 (C.D. Cal. Sep. 27, 2010) (citing *Thomas*, 278 F.3d at 959; and *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Because the ALJ provided multiple clear and convincing reasons to discount Plaintiff's subjective testimony, the ALJ's findings in this regard are affirmed.

B. <u>The ALJ did not err in assessing the medical opinion evidence.</u>

Plaintiff challenges the ALJ's assessment of opinions written by examining psychiatrist Sara Clark, M.D.; treating physician Saritha Reddy, M.D.; and the State agency reviewing consultants. The Court will address each disputed opinion in turn.

1. *Legal standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751;

*see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss*, 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2 (Jul. 2, 1996). Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining

doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

### 2. *Drs. Clark & Reddy*

Dr. Clark examined Plaintiff in November 2013, and her medical source statement reads as follows, in pertinent part:

> The claimant does have the ability to perform very simple and repetitive tasks that have to do with [activities of daily living], however, she would have more difficulty completing detailed and complex tasks. This is based on her concrete thinking, difficulties with concentration, and difficulty performing a simple, 3-step command. The claimant cannot accept instructions from supervisors consistently, as well as interact with coworkers and the public at this time. This is based on her overall affect and demeanor and paranoid ideation. The claimant cannot perform work activities on a consistent basis with or without additional supervision. This is based on her subjective psychiatric symptoms and her interactions with me today. The claimant cannot complete a normal workday and workweek without interruptions from her psychiatric condition. I anticipate that the claimant would not be able to deal well with the usual stress encountered in a competitive work environment at this time.

AR at 596-601.

Plaintiff's treating physician Dr. Reddy completed a form checkbox opinion, indicating that Plaintiff's bipolar disorder causes moderate limitations when not symptomatic, and marked/extreme limitations when symptomatic. AR at 627-34.

The ALJ discounted the opinions of Drs. Clark and Reddy, finding them to be inconsistent with Plaintiff's longitudinal treatment history, her mental status examinations, and her daily activities. AR at 29. Specifically, the ALJ noted that the opinions were inconsistent with Plaintiff's "consistent reports as calm, cooperative, and euthymic moods[.]" *Id*. (citing AR at 580-95). The ALJ also found the opinions to be inconsistent with Plaintiff's ability to live independently, and work in 2014. AR at 29. Lastly, the ALJ noted that Plaintiff reported

that "things are going well and denied depression, anxiety, or psychosis throughout 2013 and 2014[.]" *Id.* (citing AR at 580-95, 639-76).

Plaintiff argues that the ALJ's reasoning was erroneous because Dr. Clark did not rely only on Plaintiff's self-report. Dkt. 11 at 4. This argument is inapposite, because the ALJ did not discount Dr. Clark's opinion on that basis. *See* AR at 29. Plaintiff also argues that the ALJ's reasoning was not sufficiently specific because the ALJ did not explain how the treatment record or Plaintiff's activities were contradicted by Dr. Clark's opinion, but she overlooks the specific examples provided by the ALJ. Dkt. 11 at 4-5; AR at 29 (addressing how Plaintiff was described in her treatment records, and what symptoms Plaintiff reported to providers, as well as her ability to live independently and work). The ALJ did not simply use boilerplate language, as Plaintiff suggests, but identified the inconsistencies she had in mind.

Plaintiff also argues that the ALJ erred in failing to give proper deference to Dr. Reddy's opinion, because she is Plaintiff's treating physician. Dkt. 11 at 11. But an ALJ does not err in discounting an opinion, even that of a treating physician, that is inconsistent with the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Finally, Plaintiff argues that the ALJ erred in failing to consider that her symptoms waxed and waned, and by focusing only on evidence during an isolated period of improvement. Dkt. 11 at 11. She cites medical records that she contends contradict the ALJ's finding that her symptoms improved in 2013 and 2014, but the records cited do not support Plaintiff's argument. Dkt. 15 at 3 (citing AR at 599, 670, 668). The first record, which Plaintiff contends is an examining physician's report that dates to a few months before Dr. Clark's exam (Dkt. 15 at 3), but the citation leads instead to Dr. Clark's report, which indicates some paranoia but no delusions. *See* AR at 599. Next, Plaintiff refers to a treatment note that she contends establishes the existence of a psychotic delusions, but the treatment note mentions

only delusions in the past and specifically indicates that Plaintiff was not experiencing

delusions at that time. AR at 670, 674. Likewise, although Plaintiff did report feeling "out of

control" in January 2014, she did not report any psychosis. AR at 668. Thus, Plaintiff's

citations to the record do not show that her psychosis flared in 2013 or 2014.

    4.     *State agency consultants*

The ALJ gave significant weight to the opinions of State agency psychological

consultants, finding the opinions to be consistent with the treatment record as well as

Plaintiff's current work as a substitute teacher. AR at 29. Plaintiff argues that the ALJ erred in

purporting to credit the State agency opinions, but in failing to explain why she did not account

for their opinion that Plaintiff would have some difficulty maintaining concentration,

persistence, and pace for a normal workday/workweek. *See* AR at 97, 110. Although the State

agency consultants concluded that Plaintiff would be able to persist for the majority of the

time, Plaintiff posits that the opinions insinuate that she could not persist for an entire workday

and would be therefore disabled, in light of vocational expert ("VE") testimony that a person

who is off-task for 15% or more of a day is unemployable. Dkt. 11 at 12 (referencing AR at

85-86).

Plaintiff's interpretation of the State agency opinion could be plausible, but it is also

reasonable to interpret the State agency opinions as the ALJ did, to indicate that Plaintiff could

persist sufficiently to maintain employment, given that the consultants opined that she was not

disabled. *See* AR at 99, 113. Furthermore, Plaintiff only speculates that the State agency

opinion amounts to an indication that she would be off-task for 15% of a workday; the State

agency consultants did not quantify the amount of time during which Plaintiff would have

difficulty maintaining concentration, persistence, and pace. Thus, it is not clear that the VE

testimony pertains to the consultants' opinions. Because Plaintiff has not shown that the ALJ's

interpretation of the State agency opinions was unreasonable, the ALJ's interpretation must be affirmed. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## VIII.   CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision.

DATED this 13th day of April, 2017.

James P. Donohue
_____
JAMES P. DONOHUE
Chief United States Magistrate Judge